**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JEROME TREADWELL, Individually, and on Behalf of All Others Similarly Situated,** | ) ) ) | |
| | ) | **Case No. 18-cv-08212** |
| **Plaintiff,** | ) | |
| | ) | **Honorable Jorge L. Alonso** |
| v. | ) | |
| | ) | |
| **POWER SOLUTIONS INTERNATIONAL, INC.,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff Jerome Treadwell ("Plaintiff" or "Treadwell"), individually and on behalf of all others similarly situated (the "Class"), by and through his attorneys, brings the following Amended Class Action Complaint ("Amended Complaint") pursuant to Rule 23 of the Federal Rules of Civil Procedure against Power Solutions International, Inc. ("Power Solutions" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.      Defendant Power Solutions International, Inc. is a company that manufactures and distributes engines and power systems to industrial and on-road sectors.

2.      When Power Solutions hires an employee, he or she is enrolled in its NOVAtime[1] employee database using a scan of his or her fingerprint. Power Solutions uses the NOVAtime employee database to monitor the time worked by its hourly employees.

3.      While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Power Solutions' employees are required to have their fingerprints scanned by a biometric timekeeping device.

4.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Power Solutions – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Power Solutions' employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have _**no**_ means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million

---

[1] NOVAtime Technology Inc. is a technology company that provides software and hardware that tracks and monitors employees' time and attendance to companies worldwide.

federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

7.      An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/ worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

8.      In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect, store and use Illinois citizens' biometrics, such as fingerprints.

10.     Notwithstanding the clear and unequivocal requirements of the law, Power Solutions disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, disseminates, and uses employees' biometric data in violation of BIPA. Specifically, Power Solutions has violated and continues to violate BIPA because it did not and continues not to:

A.      Properly inform Plaintiff and others similarly situated in writing of the specific purpose(s) and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

B. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA;

C. Receive a written release from Plaintiff and others similarly situated to collect, store, or otherwise use their fingerprints, as required by BIPA; and

D. Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to third parties as required by BIPA.

11. Accordingly, Plaintiff, on behalf of himself as well as the putative Class, seeks an Order: (1) declaring that Power Solutions' conduct violates BIPA; (2) requiring Power Solutions to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

12. Plaintiff Jerome Treadwell is a natural person and a citizen of the State of Illinois.

13. Defendant Power Solutions is a Delaware corporation that is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County. Defendant Power Solutions' principle place of business is in Wood Dale, Illinois.

## JURISDICTION AND VENUE

14. This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B) because the proposed class has 100 or more members, the amount in controversy exceeds $5,000,000.00, and the parties are minimally diverse.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## FACTUAL BACKGROUND

**I.      The Biometric Information Privacy Act.**

16.     Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS 14/5.

17.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. The bankruptcy was alarming to the Illinois legislature because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

18.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

19.     Additionally, to ensure compliance, BIPA provides that, for <u>each</u> violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

20.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

1)  informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

2)  informs the subject in writing of the specific purpose(s) and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

3)  receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

21.     BIPA specifically applies to employees who work in the State of Illinois.  BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment."  740 ILCS 14/10.

22.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

23.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

24. BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

25. The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse. Biometric data, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

26. BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

## II. Defendant Violates the Biometric Information Privacy Act.

27. By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using employees' biometric data stopped doing so.

28.     However, Defendant failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, Power Solutions continues to collect, store, use, and disseminate employees' biometric data in violation of BIPA.

29.     Specifically, when employees are hired by Power Solutions, they are required to have their fingerprints captured and stored to enroll them in its NOVAtime employee database(s).

30.     Power Solutions uses an employee time tracking system supplied by NOVAtime that requires employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, all Power Solutions employees must use their fingerprints to "punch" in and out of work.

31.     Upon information and belief, Power Solutions fails to inform its employees that it discloses their fingerprint data to at least one out-of-state third-party vendor, NOVAtime, and likely others; fails to inform its employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform its employees of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from employees before collecting their fingerprints.

32.     Furthermore, Power Solutions fails to provide employees with a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

33.     The Pay by Touch bankruptcy, which triggered the passage of BIPA, highlights why such conduct – where individuals are aware that they are providing a fingerprint but are not aware to whom or for what purposes they are doing so – is dangerous. This bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when

providing biometric identifiers such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes it will be transmitted, and for how long. Power Solutions disregards these obligations and its employees' statutory rights and instead unlawfully collects, stores, uses, and disseminates its employees' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

34.     Upon information and belief, Power Solutions lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with the company.

35.     Power Solutions' employees are not told what might happen to their biometric data if and when it merges with another company or worse, if and when its business folds, or when the other third parties that have received their biometric data businesses fold.

36.     Since Power Solutions neither publishes BIPA-mandated data retention policies nor discloses the purposes for its collection of biometric data, Power Solutions' employees have no idea to whom it sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told to whom Power Solutions currently discloses their biometric data to, or what might happen to their biometric data in the event of a merger or a bankruptcy.

37.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

38.     By and through the actions detailed above, Power Solutions disregards Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

### III. Plaintiff Jerome Treadwell's Experiences.

39.　　Plaintiff Jerome Treadwell has worked as a production assembler for Power Solutions since April 2018 and is still currently employed.

40.　　As a condition of employment, Treadwell *was required* to scan his fingerprint so Power Solutions could use it as an authentication method to track his time worked.

41.　　Power Solutions subsequently stored Treadwell's fingerprint data in its NOVAtime employee database(s).

42.　　Treadwell was required to scan his fingerprint each time he began and ended his workday.

43.　　Treadwell has never been informed, prior to the collection of his biometric identifiers and/or biometric information, of the specific limited purposes or length of time for which Power Solutions collected, stored, used, and/or disseminated his biometric data.

44.　　Prior to the collection of his biometric identifiers and/or biometric information, Treadwell has never been informed of any biometric data retention policy developed by Power Solutions, nor has he ever been informed whether Power Solutions will ever permanently delete his biometric data.

45.　　Prior to the collection of his biometric identifiers and/or biometric information, Treadwell has never been provided with nor ever signed a written release allowing Power Solutions to collect, store, use, or disseminate his biometric data.

46.　　Treadwell has continuously and repeatedly been exposed to the risks and harmful conditions created by Power Solutions' violations of BIPA as alleged herein.

47.　　No amount of time or money can compensate Treadwell if his biometric data is compromised by the lax procedures through which Power Solutions captured, stored, used, and

disseminated his and other similarly-situated individuals' biometric data. Moreover, Treadwell would not have provided his biometric data to Power Solutions if he had known that it would retain such information for an indefinite period of time without his consent.

48.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Nonetheless, Treadwell has been aggrieved because he suffered an injury-in-fact based on Power Solutions' violations of his legal rights. Power Solutions intentionally interfered with Treadwell's right to possess and control his own sensitive biometric data. Additionally, Treadwell suffered an invasion of a legally protected interest when Power Solutions secured his personal and private biometric data at a time when it had no right to do so, a gross invasion of his right to privacy. BIPA protects employees like Treadwell from this precise conduct. Power Solutions had no lawful right to secure this data or share it with third parties absent a specific legislative license to do so.

49.     Treadwell's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Treadwell was not sufficiently compensated by Power Solutions for its retention and use of his and other similarly-situated employees' biometric data. Treadwell would not have agreed to work for Power Solutions for the compensation he receives if he had known that Power Solutions would retain his biometric data indefinitely.

50.     Treadwell also suffered an informational injury because Power Solutions failed to provide him with information to which he was entitled by statute. Through BIPA, the Illinois

legislature has created a right: an employee's right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data: and an injury – not receiving this extremely critical information.

51.    Treadwell also suffered an injury in fact because Power Solutions improperly disseminated his biometric identifiers and biometric information to third parties, including NOVAtime, and others that hosted the biometric data in their data centers, in violation of BIPA.

52.    Pursuant to 740 ILCS 14/15(b), Treadwell was entitled to receive certain information prior to Power Solutions securing his biometric data; namely, information advising him of the specific limited purpose(s) and length of time for which Power Solutions collects, stores, uses, and disseminates his biometric data; information regarding Power Solutions' biometric retention policy; and, a written release allowing Power Solutions to collect, store, use, and disseminate his private biometric data. By depriving Treadwell of this information, Power Solutions injured him. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

53.    Treadwell has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of his biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Power Solutions' policies and practices; in the form of the unauthorized disclosure of his confidential biometric data to third parties, including but not limited to NOVAtime; in the form of interference with his right to control and possess his confidential biometric data; and, in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

54. As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Power Solutions. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

55. Pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, Plaintiff brings claims on his own behalf and as representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1 *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

56. As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

57. Plaintiff seeks class certification for the following class of similarly-situated employees under BIPA:

> All individuals working for Power Solutions in the State of Illinois who had their fingerprints collected, captured, received, stored or otherwise obtained or disclosed by Defendant during the applicable statutory period.

58. This action is properly maintained as a class action under Rule 23 because:

A. The class is so numerous that joinder of all members is impracticable;

B. There are questions of law or fact that are common to the class;

C.      The claims of the Plaintiff are typical of the claims of the class;

D.      The Plaintiff will fairly and adequately protect the interests of the class.

## Numerosity

59.     The total number of putative class members exceeds 100 individuals. The exact number of class members can easily be determined from Power Solutions' payroll records.

## Commonality

60.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.      Whether Defendant collected, captured or otherwise obtained Plaintiff's biometric identifiers or biometric information;

B.      Whether Defendant properly informed Plaintiff of its purposes for collecting, using, and storing his biometric identifiers or biometric information;

C.      Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's biometric identifiers or biometric information;

D.      Whether Defendant disclosed or re-disclosed Plaintiff's biometric identifiers or biometric information;

E.      Whether Defendant sold, leased, traded, or otherwise profited from Plaintiff's biometric identifiers or biometric information;

F.      Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

G.      Whether Defendant complies with any such written policy (if one exists);

14

H.    Whether Defendant used Plaintiff's fingerprints to identify him;

I.    Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.    Whether the violations of BIPA were committed negligently; and

K.    Whether the violations of BIPA were committed recklessly or intentionally.

61.    Plaintiff anticipates that Defendant will raise defenses that are common to the class.

## Adequacy

62.    Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

63.    The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

64.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23(b)(3).

## Predominance and Superiority

65.    The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members.  A class action is superior to other available means for the fair and efficient adjudication of this controversy

because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

66.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## FIRST CAUSE OF ACTION
### Violation of BIPA Section 15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule

67.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

68.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

69.     Defendant fails to comply with these BIPA mandates.

70.     Defendant Power Solutions is a corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

71.     Plaintiff and the Class are individuals who had their "biometric identifiers" (in the form of their fingerprints) collected by Defendant, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

72.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

73.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

74.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

75.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA

pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CAUSE OF ACTION**
**Violation of BIPA Section 15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

76.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

78.     Defendant fails to comply with these BIPA mandates.

79.     Defendant Power Solutions is a corporation registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

80.     Plaintiff and the Class are individuals who had their "biometric identifiers" (in the form of their fingerprints) collected by Defendant, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

81.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

82.     Defendant systematically and automatically collected, used, stored, and disclosed Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

83.     Defendant did not inform Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

84.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

85.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**THIRD CAUSE OF ACTION**
**Violation of BIPA Section 15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent**

86.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87. BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

88. Defendant fails to comply with this BIPA mandate.

89. Defendant Power Solutions is a corporation registered to do business in Illinois and thus qualifies as a "private entity" Under BIPA. *See* 740 ILCS 14/10.

90. Plaintiff and the Class are individuals who had their "biometric identifiers" (in the form of their fingerprints) collected by Defendant, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

91. Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

92. Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

93. By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

94. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS

14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Jerome Treadwell as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B. Declaring that Defendant's actions, as set forth above, violate BIPA;

C. Awarding statutory damages of $5,000 for each reckless and/or intentional violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D. Declaring that Defendant's actions, as set forth above, were reckless or intentional;

E. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use, destroy and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F. Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

G. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

H. Provide such further relief as the Court deems just and equitable.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.


Date:  April 11, 2019                    Respectfully Submitted,

                                         */s/ Andrew C. Ficzko*
                                         James B. Zouras
                                         Ryan F. Stephan
                                         Andrew C. Ficzko
                                         **STEPHAN ZOURAS, LLP**
                                         100 N Riverside Plaza
                                         Suite 2150
                                         Chicago, Illinois 60606
                                         312.233.1550
                                         312.233.1560 *f*
                                         jzouras@stephanzouras.com
                                         rstephan@stephanzouras.com
                                         aficzko@stephanzouras.com

                                         **ATTORNEYS FOR PLAINTIFF
                                         AND THE PUTATIVE CLASS**


**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on April 11, 2019, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.


                                         */s/ Andrew C. Ficzko*