IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME TREADWELL, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 18 C 8212 ) ) Hon. Jorge L. Alonso |
| v. | ) ) |
| POWER SOLUTIONS INTERNATIONAL, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Power Solutions International, Inc. ("PSI") moves to dismiss Plaintiff Jerome Treadwell's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court denies PSI's motion to dismiss [49].

## BACKGROUND

Treadwell filed a putative class action against his employer PSI, alleging that PSI's use of a fingerprint timekeeping system violates the Illinois Biometric Information Privacy Act ("BIPA"). (*See generally* Am. Cmplt., ECF No. 43.) PSI is a company that manufactures and distributes industrial engines and power systems. (*See id.* at ¶ 1.) Treadwell was hired by PSI in April 2018 to work as a production assembler and is still employed in that role. (*See id.* at ¶ 39.) Treadwell alleges that when PSI hires its employees, PSI requires the employees to scan their fingerprints into a database operated by NOVAtime Technology, Inc. ("NOVAtime"), a company that provides equipment to track employees' work hours.[1] (*See id.* at ¶¶ 2-3.) Treadwell was

---

[1] NOVAtime was named as a defendant in Treadwell's initial complaint, which was originally filed in the Circuit Court of Cook County. On December 14, 2018, NOVAtime removed the action pursuant to 28 U.S.C. §§ 1332(d), 1446, and 1453(b). (*See* Not. of Removal, ECF No. 1.) Thereafter, Treadwell filed a joint stipulation to voluntarily dismiss NOVAtime, which the Court granted. (*See* ECF Nos. 26 and 27.)

1

required to scan his fingerprints each time he began and ended his workday so that PSI could track his time. (*See id.* at ¶¶ 40-42.)

BIPA imposes certain restrictions on how private entities like PSI collect, retain, use, disclose, and destroy "biometric identifiers" and "biometric information." *See generally* 740 ILCS 14/1 *et seq*. BIPA defines "biometric identifier" as including an individual's fingerprints. 740 ILCS 14/10. BIPA mandates that before obtaining an individual's fingerprint, a private entity must inform the individual in writing about several things, such as the fact that his/her biometric identifier is being collected, the specific purpose of collecting or using the biometric identifier, and the length of time for which the biometric identifier will be collected, stored, and used. 740 ILCS 14/15(b). The entity must also obtain a signed "written release" from an individual before collecting his/her biometric identifier, *see id.*; in the employment context, BIPA specifically defines "written release" as "a release executed by an employee as a condition of employment." 740 ILCS 14/10. Further, BIPA also requires a private entity to obtain consent before disclosing or disseminating an individual's biometric identifier to a third party. 740 ILCS 14/15(d). Finally, a private entity in possession of biometric identifiers must make publicly available a "retention schedule and guidelines" it uses for permanently destroying biometric identifiers it has collected after a certain time period. 740 ILCS 14/15(a).

Treadwell alleges that PSI has violated and continues to violate BIPA by: (1) failing to inform him and other PSI employees in writing of the specific purpose and length of time for which their fingerprints are being collected and used; (2) failing to obtain a written release from him and other PSI employees before collecting their fingerprints; (3) failing to provide a publicly available retention schedule and guidelines for permanently deleting PSI employees' fingerprints; and (4)

---

Following NOVAtime's dismissal, Treadwell moved for remand, which PSI opposed. (*See* ECF Nos. 52, 62, 68, and 74.) The Court denied remand. (*See* ECF No. 79.)

failing to obtain consent from PSI employees before disclosing their fingerprints to third parties. (*See* ECF No. 43 at ¶¶ 10, 43-45.) Treadwell claims he has been injured by PSI's interfering with his right to control his biometric data, denying him compensation for the retention and use of his biometric identifier, improperly disclosing his biometric identifier to third parties, including NOVAtime, and failing to provide him information regarding his biometric data to which he is entitled under BIPA. (*See id.* at ¶¶ 48-53.) Treadwell does not allege mental anguish as an injury. Treadwell is seeking statutory damages as well as declaratory and injunctive relief on behalf of himself and other similarly situated PSI employees for PSI's alleged violations of BIPA. (*See id.* at ¶ 95.)

PSI moved to dismiss Treadwell's amended complaint, and the parties have fully briefed the motion. The Court also permitted Treadwell to submit a steady stream of supplemental authority, and PSI had the opportunity to respond to this supplemental authority. (*See* ECF Nos. 63, 69, 81, 82, 86, 88, 94, 98, 99, and 100.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under federal notice-pleading standards, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court "accept[s] as true all of the

well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

## DISCUSSION

PSI moves to dismiss Treadwell's Amended Complaint on two grounds. First, PSI argues that Treadwell's claims for monetary damages under BIPA are preempted by the exclusive remedy provision in the Illinois Workers' Compensation Act ("IWCA"). (*See* Memo. in Support of Mot. to Dismiss, ECF No. 50, at 6-11.) Alternatively, PSI argues that Treadwell's BIPA claims are subject to either a one-year or two-year statute of limitations and that any possible claim outside these time limitations must be barred. (*See id.* at 11-20.) The Court handles each argument in turn.

Both PSI's arguments require interpretation and application of Illinois law. The Court notes that, although enacted in 2008, BIPA has only somewhat recently become a source of litigation. The Illinois Supreme Court has only issued one opinion relating to BIPA, and that opinion does not address either issue presented by PSI's motion. *See generally Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197 (Ill. 2019) (resolving statutory standing issue). Consequently, "[a]s a federal court sitting in diversity jurisdiction, [the Court's] task is to predict how the Illinois Supreme Court would decide the issues presented here…Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Court control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) (citations omitted).

## I. Illinois Workers' Compensation Act

PSI argues that the IWCA preempts Treadwell's claims for statutory damages. Preemption is an affirmative defense. *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir. 2018). A plaintiff need not plead around an affirmative defense, so for purposes of a Rule 12(b)(6) motion,

4

a court may dismiss a claim based on an affirmative defense only when the plaintiff "plead[s] himself out of court by alleging (and thus admitting) the ingredients of a defense." *Chi. Bldg Design, PC v. Mongolian House Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014); *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 956-57 (N.D. Ill. 2002) (explaining that a plaintiff need not necessarily plead around IWCA preemption because it is an affirmative defense that the defendant must prove).

The IWCA "is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment." *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1226 (Ill. 1990). The IWCA contains an "exclusive remedy provision" in which "the Act imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer." *Id.* (explaining provision was intended as an equitable "*quid pro quo*" between employers and employees). Sections 5(a) and 11 together constitute this exclusive remedy provision. Section 5(a) provides:

> [N]o common law or statutory right to recover damages from the employer . . . for injury or death sustained by any employee while engaged in the line of his duty. . . other than the compensation provided herein, is available to any employee who is covered by . . . this Act

820 ILCS 305/5(a). Section 11 provides:

> [T]he compensation herein provided [in the IWCA] . . . shall be the measure of the responsibility of any employer . . . for accidental injuries sustained by any employee arising out of and in the course of the employment

820 ILCS 305/11. Together, these sections generally bar employees from brining common law or statutory claims for damages against employers.

To escape the exclusive remedy provision's preemptive effect, an employee must ultimately prove that his/her injury: (1) was not accidental; (2) did not arise from his or her employment; (3) was not received during the course of employment; or (4) is not compensable

5

under the IWCA. *Id.* at 1226; *see also Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 202 (Ill. 1980).

PSI argues that Treadwell's amended complaint clearly shows that the IWCA's exclusive remedy preempts his statutory damages claims and that Treadwell fails to show any of the four exceptions apply. (*See* ECF No. 50 at 6-11; *see also* Reply in Support of Mot. to Dismiss, ECF No. 67 at 1-13.) As PSI points out in its reply, Treadwell apparently concedes that the second and third exceptions do not apply, i.e., that Treadwell's injury did "arise from his employment" and was "received during the course of employment." (ECF No. 67 at 13.) However, Treadwell argues that the first and fourth exceptions apply, i.e., his injury was not "accidental" and is not "compensable" within the meaning of the IWCA. (ECF No. 57 at 5-9.) PSI replies that applying IWCA's plain language and relevant Illinois case law leaves no choice but to find the exclusive remedy provision applies here.

### A. Accidental Injury

At this stage, the Court finds that Plaintiff pleads facts showing that the injury is not accidental and thus, is not preempted by the IWCA. As PSI points out, the Illinois Supreme Court has held that "the term 'accident' is not 'a technical legal term but encompasses anything that happens without design or an event which is unforeseen by the person to whom it happens.'" *Pathfinder Co. v. Indus. Comm'n*, 343 N.E.2d 913, 917 (Ill. 1976) (quoting *Int'l Harvester Co. v. Indus. Comm'n*, 305 N.E.2d 529, 532 (Ill. 1973)). In refining this "accident" inquiry in the context of intentional torts, the Illinois Supreme Court has held that an employee "must allege that the [employer] acted deliberately with specific intent to injure the [employee]." *Copass v. Illinois Power Co.*, 569 N.E.2d 1211, 1216 (Ill. App. 4th Dist. 1991) (rejecting lower standard of intent

for intentional torts that would only require an employer to be "substantially certain" that its act would cause injury to be deemed non-accidental).

PSI first argues that Treadwell fails to allege facts showing PSI's "specific intent" to produce the harm that Treadwell suffered because Treadwell only alleges a "series of omissions" (i.e., PSI's failure to obtain employee consent, PSI's failure to establish a retention schedule, etc.), and omissions "are the antithesis of an intentional act." The Court disagrees with PSI's characterization of the pleadings. Treadwell clearly alleges that PSI intended to collect and use its employees' fingerprints as part of its biometric timekeeping system, and that PSI did not comply with BIPA's notice requirements. (ECF No. 49 at ¶¶ 29-32, 34-35, 40-45.) This, in and of itself, *is* an injury, according to *Rosenbach*. 129 N.E.3d at 1206 ("When a private entity fails to adhere to the [BIPA] statutory procedures . . . the right of the individual to maintain his or her biometric privacy vanishes into this air . . . This is no mere 'technicality.' *The injury is real and significant*.") (emphasis added).[2] So, keeping in mind that PSI "is presumed to know the law," Treadwell has alleged that PSI intended to collect and use employee biometric information without complying with BIPA's requirements, i.e., that PSI intended to injure its employees. *See Jones v. Bd. of Educ. of City of Chicago*, 996 N.E.2d 1093, 1099 (noting "it has long been the law that everyone is presumed to know the law"); *see also Ohio Nat'l Life Assurance Corp. v. Davis*, No. 10 C 2386, 2014 WL 5420057, at *4 (N.D. Ill. Oct. 24, 2014) (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Urlich, LPA*, 559 U.S. 573, 582-83 (2010) ("Our law is . . . no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law.")). As such, this alleged injury is not accidental.

---

[2] The IWCA does not define "injury." *See generally* 820 ILCS 305 *et seq*.

Further, Treadwell alleges he suffered multiple other injuries as a result of PSI's conduct; namely, he claims he was injured by PSI's: (1) interfering with his right to control his biometric data; (2) denying him compensation for the retention and use of his biometric identifier; (3) improperly disclosing his biometric identifier to third parties, including NOVAtime; and (4) failing to provide him information regarding his biometric data, i.e., an "informational injury." (*See* ECF No. 43 at ¶¶ 48-53.) Drawing all reasonable inferences from the pleadings, it is fair to say Treadwell could prove that, in implementing its timekeeping system, PSI thought about the consequences of its actions—i.e., that it would injure Treadwell in ways described above—and implemented the timekeeping system anyway. As such, Treadwell has sufficiently alleged the requisite intent to render these injuries non-accidental. Through the course of discovery, PSI could prove these other injuries were accidental, but at this stage "it is enough to say plaintiff has not alleged (and thus admitted) that the conduct was necessarily accidental." *Phillips v. Exxon Mobil Corp.*, No. 17 C 07703, 2018 WL 3458286, at *2 (N.D. Ill. July 18, 2018) (denying motion to dismiss based on IWCA preemption where pleadings did not necessarily show injury was accidental); *Arnold*, 215 F. Supp. at 956–57 (denying motion to dismiss one of plaintiff's claims on IWCA preemption grounds where plaintiff could prove injury was not accidental).

Moreover, in its reply, PSI argues that any injuries here were accidental because they were "unforeseen by the person to whom it happen[ed]." (*See* ECF No. 67 at 11-12) (quoting *Pathfinder*, 343 N.E.2d at 917). The Court has found nothing in Illinois case law that suggests a plaintiff is required to prove that he/she foresaw the injury to render it non-accidental. The language quoted by PSI is likely guidance on what might constitute an accident rather than a rigid element to apply. *See Pathfinder*, 343 N.E.2d at 917 (explaining an accident "encompasses *anything that happens without design or* an event which is unforeseen by the person to whom it happens"). Indeed, rigidly

applying this language would likely undermine the "paramount interest" underpinning the IWCA, which "is to avoid shielding from liability [an employer] who intends to do harm." *Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 203 (Ill. 1980). For example, under PSI's reasoning, an employer who intentionally poisons an employee with asbestos dust while actively lulling the employee into believing the dust is not harmful could argue the resulting injury is "accidental" because the employee did not foresee the injury under the circumstances, but such a result would be absurd. *See Handley v. Unacro Industries, Inc.*, 463 N.E.2d 1011, 1023 (Ill. App. 4th Dist. 1984) (affirming denial of motion to dismiss and finding plaintiff sufficiently alleged employer intentionally injured plaintiffs). Thus, as explained above, Treadwell could very well prove PSI acted with design—indeed with specific intent—in unlawfully operating its timekeeping system and allegedly injuring him. That is sufficient at this stage to avoid preemption.

### B. Compensability

The parties spent considerable time in their briefs on the fourth exception to the IWCA's exclusive remedy provision, i.e., whether Treadwell can show his alleged injuries are not "compensable" under the Act. *Meerbrey*, 139 Ill.2d at 463. PSI argues that the plain language of the IWCA and Illinois case law makes clear that an injury is deemed "compensable" if it "arose out of or in the course of employment." (ECF No. 67 at 6) (quoting *Folta v. Ferro Eng'g*, 2015 IL 118070, ¶ 18). As such, PSI essentially argues that this fourth exception is a combination and restatement of the second and third exceptions. Treadwell, on the other hand, interprets the fourth exception to mean that only physical or psychological injuries are compensable under the Act, and Treadwell alleges that his injuries are neither physical nor psychological. (ECF No. 57 at 5-8.)

In *Folta*, the Illinois Supreme Court noted it had "limited opportunity" to explain the fourth exception and attempted to provide some clarity in determining whether the plaintiff's

9

mesothelioma, which had only manifested after the IWCA's statute of repose period had expired, was "compensable" under the Act. 43 N.E.3d 108, 113-15 (Ill. 2015). The Court ruled the question was not whether an injury was literally compensable—i.e., whether under the IWCA, the employee could receive compensation for his/her injuries—but "whether the type of injury categorically fits within the purview of the Act." *Id*. at 114. Although somewhat vague, the *Folta* court made clear that this inquiry is broader than just whether an injury arises out of and in the course of employment and does, to some extent, consider the character of the injury. *Id*. at 114 (discussing cases and noting "we further refined our inquiry as to what is meant by compensable by considering whether an employee was covered under the Act where the *essence of the harm was a psychological disability, and not a traditional physical injury*") (emphasis added).

PSI correctly points out that the plain language of the IWCA imposes no explicit requirement that an injury must by physical or psychological to be covered, but decisions like *Folta* suggest that compensability refers to the type of harm an employee suffers. For example, Section 8 of the Act provides for amounts of compensation an employee can recover for nonfatal injuries, and it appears Treadwell would not be able to recover anything for his alleged injuries. *See generally* 820 ILCS 305/8. While this alone does not render Treadwell's injuries "non-compensable" for preemption purposes, *Folta*, 43 N.E.3d at 118,[3] it does evidence the type of injuries the Illinois legislature contemplated and intended to be covered by the IWCA. *See Sylvester v. Indus. Comm'n*, 756 N.E.2d 822, 827 (Ill. 2001) (noting well-established principles of statutory construction, including that a court's primary goal "is to ascertain and give effect to the

---

[3] The Court also notes that Treadwell's circumstances differ from the employee in *Folta*. In *Folta*, although the specific employee's injury manifested after the IWCA's statute of repose, the Illinois Supreme Court noted that would not always be the case for similar injuries with long latency periods. *Folta*, 43 N.E.3d at 119. Here, on the other hand, it appears injuries like Treadwell's would *always* be literally non-compensable under the Act.

10

intention of the legislature" and that the court "determine[s] this intent by reading the statute as a whole and considering all relevant parts"). Further, in holding that psychological injuries—and not just physical injuries—are covered by the IWCA, the Illinois Supreme Court suggested the test for whether an employee suffered a compensable injury should be "whether there was a harmful change in the *human organism*—not just its bones and muscles, but its brain and nerves as well." *Pathfinder*, 343 N.E.2d at 918 (quoting Larson, Mental & Nervous Injury in Workmen's Compensation, 23 Vand. L. Rev. 1243, 1260 (1970)) (emphasis added). Under this test, Treadwell's injuries would not be compensable. Consistent with these indicators, courts applying the IWCA have not found that non-physical and non-psychological injuries are preempted. *See e.g., Jones v. UPS Ground Freight, Inc.*, No. 15 C 7991, 2016 WL 826403, at *3 (N.D. Ill. Mar. 3, 2016) (finding IWCA did not preempt employee's alleged injuries stemming from malicious prosecution because plaintiff did not suffer any physical or psychological harm); *see also Goforth v. Decatur Public Sch. Dist.*, 1999 WL 33321344 (Ill. Indus. Comm'n Dec. 23, 1999) (finding IWCA did not cover malicious prosecution claim because employee did not suffer "physical contact or trauma…[or] a sudden, severe emotional shock").[4]

Based on the foregoing reasons and on the fact that PSI fails to cite a single case where the IWCA preempted injuries like the ones Treadwell allegedly suffered, the Court believes it likely the Illinois Supreme Court would find Treadwell's injuries are not the "type of injury [that] categorically fits within the purview of the Act" and are thus not "compensable." *Folta*, 43 N.E. 3d at 114. If the Illinois Supreme Court were to hold otherwise, such a ruling would be a novel

---

[4] As mentioned above, Treadwell notified the Court of several Cook County circuit court opinions finding that injuries stemming from BIPA violations were not "compensable" under the IWCA because the injuries were not physical or psychological. (*See* ECF Nos. 63, 69, 81, 82, 86, 94, 98, 99, and 100.) Although the Court agrees with the result of these decisions, the Court does not rely on them in deciding the instant motion because they provide limited analysis on the issue.

development in interpreting and applying the IWCA. Unfortunately for PSI, sitting in diversity jurisdiction, this Court "take[s] state law as it is rather than predicting novel developments." *Knight v. Enbridge Pipelines (FSP) L.L.C.*, 759 F.3d 675, 678 (7th Cir. 2014) (declining to characterize a contract as an option subject to the Rule Against Perpetuities because no Illinois court had done so and observing "if there is no support for the [movant's] position in Illinois case law the game is up"). Absent additional guidance from the Illinois Supreme Court, the Court believes Treadwell's alleged injuries would not be deemed "compensable" under the IWCA. Regardless, denial of PSI's motion is proper because Treadwell has plausibly alleged his injuries were not accidental.[5]

## II. Statute of Limitations

In the alternative, PSI argues that all potential claims by PSI employees that accrued prior to the applicable statute of limitations should be dismissed with prejudice. PSI correctly points out that BIPA does not include an explicit statute of limitations. PSI argues that the one-year statute of limitations for defamation and privacy claims should govern BIPA claims, and if not a one-year period, then the two-year statute of limitations for statutory penalty or negligence claims should apply. *See* 735 ILCS 5/13-201 (defamation and privacy claims); *see also* 735 ILCS 5/13-202 (statutory penalty and negligence claims). Finally, PSI argues that any potential claim brought by Treadwell and any other class member accrued during PSI's onboarding process, i.e., when PSI initially collected their fingerprints at the time of hiring without complying with BIPA. (See ECF No. 50 at 11-20.) Treadwell responds that Illinois' default five-year statute of limitations applies

---

[5] Finally, the Court notes that PSI opposed remand in this case, opting to file its motion before this Court instead of letting Illinois courts decide the merits of its position. *See Knight v. Enbridge Pipelines (FSP) L.L.C.*, 759 F.3d at 678 (finding it "peculiar" for movant to argue that an Illinois state court would rule in its favor when movant affirmatively chose to file in federal court and avoid state court).

12

to his BIPA claims and that Treadwell's and other class members' claims accrued when PSI most recently violated BIPA. (ECF No. 57 at 10-20.)

Despite the time the parties spent briefing these issues, they do not explain why these issues should be decided on a motion to dismiss. Like IWCA preemption, the statute of limitations is an affirmative defense. Again, a plaintiff "need not anticipate and attempt to plead around defenses," and as such, dismissal here should only be granted where the complaint "plainly reveal[s] that the action is untimely under the governing statute of limitations." *Mongolian House, Inc.*, 770 F.3d at 613-14 (quotations and citations omitted); *see also Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) (noting same in context of class action).

At this stage, the only class member identified is Treadwell. Treadwell began working for PSI in April 2018, and he filed this suit in October 2018. (*See* ECF No. 43 at ¶ 39; *see also* ECF No. 1-1.) Thus, no matter what limitations period and accrual date applies here, Treadwell's claims are clearly timely. Even assuming the Court applies a one-year statute of limitations and finds Treadwell's claims accrued at the date of his hire, he filed well within the statute of limitations. No other class member has yet been identified, nor is there anything in the pleadings suggesting how long PSI employed its biometric timekeeping system. As such, there is no indication that any potential class member would fall outside PSI's proposed cutoff of October 30, 2017. Put another way, Treadwell has not "plead[ed] himself out of court by alleging (and thus admitting) the ingredients" of a statute of limitations defense. *Mongolian House, Inc.*, 770 F.3d at 613-14. In light of the circumstances, the Court views these issues as entirely hypothetical and therefore denies PSI's motion to dismiss claims based on statute of limitations at this time. The parties may raise the issue again, as appropriate, at the class certification or summary judgment stage.

**SO ORDERED.** **ENTERED: December 16, 2019**

**HON. JORGE ALONSO**
**United States District Judge**